IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINA ROSENBERG, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 10-3526 |
| CARMEN VUOTTO and THE CITY | : | |
| OF PHILADELPHIA, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                       October 26, 2010

Currently pending before the Court is the Motion by Defendants Carmen Vuotto and the City of Philadelphia to Dismiss. For the following reasons, the Motion is granted and Plaintiff's Complaint is dismissed in its entirety.

**I.   FACTUAL BACKGROUND**

Taking all well-pled allegations in the Complaint as true, Plaintiff was hired as a police officer, on June 27, 1997, by Defendant the City of Philadelphia ("the City"). (Compl. ¶ 1.)[1] Sometime in May 2001, Plaintiff was assigned to the 1st Police District as a supervisor in the Operations Room. (Id. ¶¶ 2-3.) On April 11, 2006, Plaintiff sent a memo to Lieutenant Joseph Walsh requesting vacation days for July 5 and 6, 2006. (Id. ¶ 4.) Although the request was approved by Lt. Walsh, Defendant Captain Vuotto, who was Plaintiff's supervising commanding

---

[1] Paragraphs 1 to 9 on pages one and two of the Complaint are titled "Introduction" and "Jurisdiction/Venue." On page three of the Complaint, beginning with the section entitled "Facts," Plaintiff restarts the numbering of her paragraphs. For purposes of clarity, the Court uses only the paragraph numbers starting on page three of the Complaint.

officer, ordered Plaintiff to resubmit her vacation request directly to him, with the reason for her absence, the hotel phone number, and a copy of her hotel confirmation. (Id. ¶¶ 4-5.) Captain Vuotto purportedly never gave any such orders to male officers. (Id. ¶ 5.) Plaintiff complied with this order and provided Captain Vuotto with a new memo containing the name and confirmation number of her hotel reservation. (Id.) On April 17, 2006, Captain Vuotto approved her request for vacation. That same day, he contacted the hotel to confirm Plaintiff's reservation and also demanded that Plaintiff provide the name of the second hotel in which she would be staying – a request with which Plaintiff complied. (Id. ¶¶ 6-7.) Again according to Plaintiff, Captain Vuotto never confirmed hotel information for male officers.

Plaintiff was out of the office on vacation from July 5 through July 8, 2006. On July 8, 2006, a phone call was made to the hotel inquiring about Plaintiff's reservation, but Plaintiff was not given the caller's information. (Id. ¶ 9.) When she returned home that day, she found a "75-48" message from Captain Vuotto requesting that she contact him immediately. (Id. ¶ 10.) Although she did so, he was unavailable at the time. (Id.) The next day, on July 9, 2006, Plaintiff spoke with Captain Vuotto who said that he sent a message to Plaintiff's home because "he did not know where she was going to be." (Id. ¶ 11.) Plaintiff had assumed that the information about the second hotel had been given to Captain Vuotto by Lt. Walsh. (Id.) In connection with Captain Vuotto's behavior, Plaintiff filed a harassment complaint against him with the Fraternal Order of Police in July of 2006. (Id. ¶ 12.)

The following year, on May 21, 2007, a complainant's sister came into the 1st District to report an incident. (Id. ¶ 13.) Plaintiff, who was the Operations Room Supervisor at the time, advised the woman that she could not make a report based on someone's word other than the actual complainant. (Id.) Plaintiff further explained that the woman should go to the hospital where the complainant was and call the police to meet her there so they could see the complainant and talk to a

2

doctor or nurse about her injuries. (Id.) Plaintiff did not send a car to the relevant hospital (University of Pennsylvania Hospital) because it was in the 18th Police District. (Id.) The complainant's sister never called the police again and, as a result, no report was ever taken.

Captain Vuotto filed charges against Plaintiff, on August 8, 2007, for neglect of duty, failure to take police action, and/or failure to make the required written report in connection with this May 21, 2007 incident. (Id. ¶ 14.) Thereafter, on November 28, 2007, Plaintiff received a fifteen-day suspension without pay. (Id. ¶ 15.) Plaintiff alleges that she is unaware of any such male officers who were similarly disciplined for the same conduct. (Id. ¶ 16.)

On August 8, 2008, Plaintiff filed a sex discrimination and retaliation claim with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (Id. ¶ 24.) Plaintiff received a right-to-sue letter under 42 U.S.C. § 2000(e) for sex employment discrimination and retaliation for opposing sex employment discrimination.[2] (Compl. ¶ 26.)

On July 19, 2010, Plaintiff initiated a civil action in this Court setting forth two causes of action, as follows: (1) employment discrimination/retaliation pursuant to 42 U.S.C. § 2000e; and (2) employment discrimination/retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONST. STAT. § 951, *et seq.* Defendants filed a Motion to Dismiss on August 30, 2010, and Plaintiff responded on September 13, 2010.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United

---

[2] Although the Complaint states that the right-to-sue letter was issued by the Department of Justice, Plaintiff's Response Brief clarifies, with supporting evidence, that the letter was actually issued by the EEOC.

States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Following the basic precepts of Twombly, the Supreme Court, in the subsequent case of Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. The Supreme Court explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citing Twombly, 550 U.S. at 556-57); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (adopting Iqbal's standards).

4

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 still requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

Defendants' Motion to Dismiss is premised on two arguments. First, they contend that because Plaintiff's Title VII claims were not filed within ninety days of issuance of a "right to sue" letter by the Equal Employment Opportunity Commission ("EEOC"), they are time-barred. Second, they assert that the PHRA claims must be dismissed because Plaintiff did not file them within 180 days after the last alleged act of discrimination. The Court addresses each argument individually.

#### A. Title VII Claims

"Under Title VII, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice." Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469-70 (3d Cir. 2001) (citing 42 U.S.C. § 2000e-5(e)(1)). If the complainant also initiates a claim with a parallel state agency, the limitations period for filing with the EEOC is extended to 300 days from the date of the alleged unlawful

5

employment practice. Id. at 470 (citing 42 U.S.C. § 2000e-5(e)(1)). The complainant must then allow a minimum of 180 days for the EEOC investigation to proceed. Id. (citing Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355, 359 (1977)). If the EEOC has not resolved the charge after 180 days, it must notify the complainant, generally through the issuance of a "right-to-sue" letter, in which it states that it sees no reason to take action on the complaint. Id. (citing 42 U.S.C. § 2000e-5f(1)). After 180 days, the complainant may also request a right-to-sue letter on its own, and the EEOC must promptly issue the letter. Id. (citing 29 C.F.R. § 1601.28(a)(1)). "The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII." Id. at 670.

If a complainant chooses to pursue a private action, it must be filed within ninety days of the date on which the complainant has notice of the EEOC's decision not to pursue the administrative charge. Id. (citing 42 U.S.C. § 2000e5(f)(1)). Generally, this ninety-day period starts on the day that either the complainant or his/her attorney receives the right-to-sue letter. Id.; Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 n.1 (3d Cir. 1999). The ninety-day period for filing a court action is treated as a statute of limitations. Burgh, 251 F.3d at 470 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). Absent evidence to the contrary, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." Seitzinger, 165 F.3d at 239. Notably, however, "the statute of limitations does not begin to run unless and until there is 'final agency action,' such as the issuance of a right-to-sue letter." Burgh, 251 F.3d at 470-71 (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). "Without that final agency action, the complainant has not exhausted his administrative remedies and cannot bring suit." Id. at 471.

In the present case, the EEOC issued to Plaintiff and her counsel a right-to-sue letter, dated

and mailed December 17, 2009, notifying her that it found no violation of the statutes and that she had ninety days from receipt of the letter to file suit.  Nonetheless, plaintiff did not file suit in this case until July 19, 2010, more than seven months later and well outside the ninety-day time limit. Under a simple analysis, Plaintiff's Title VII action is therefore time-barred.

Attempting to end-run this procedural obstacle, Plaintiff now argues that this letter did not begin her ninety day time limitation since it was issued by the EEOC.  She reasons that, under 42 U.S.C. § 2000e-5(f)(1), in cases brought against a government, governmental agency, or political subdivision, the right-to-sue letter must be issued by the Attorney General.  (Pl.'s Opp'n Mot. Dismiss 3-4 (citing 42 U.S.C. § 2000e-5(f)(1)).)  Because she has not received a right-to-sue letter from the Attorney General, Plaintiff contends that her ninety day time limit has yet to begin running. (Id. at 4.)

Plaintiff's argument fails on several grounds.  First, 42 U.S.C. § 2000e-5(f)(1) states:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, *the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved* and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(f)(1) (emphasis added).  The regulations interpreting this statute go on to explain that:

> *In all cases where the respondent is a government, governmental agency, or a*

> *political subdivision, **the Commission** will issue the notice of right to sue when there has been a dismissal of a charge.* The notice of right to sue will be issued in accordance with § 1601.28(e). In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue . . .

29 C.F.R. § 1601.28(a) (emphasis added). Because, in the case at bar, the EEOC dismissed the charges against Defendant, (see Pl.'s Opp'n. Mot. Dismiss Ex. C), and the letter was not issued as a result of any request by Plaintiff, the EEOC was the proper issuing authority of the December 17, 2009 right-to-sue letter.

Moreover, even assuming *arguendo* that the Attorney General should have issued the letter, Plaintiff's efforts to effectively "bury her head in the sand" as to the administrative disposition of her administrative complaint does not entitle her to avoid the pertinent limitations period. As set forth above, the statute requires that a suit be filed within 90 days of receipt of notice of final action taken by the EEOC. 42 U.S.C. § 2000e-5(f)(1). In Ebbert v. DaimlerChrysler Corp., 319 F.3d 103 (3d Cir. 2003), the Third Circuit, acknowledging that "the statute offers no specific command as to form or content," directly addressed the issue of what constitutes sufficient "notice of final action" to trigger the statute of limitations under Title VII. Id. at 109. The plaintiff, in that matter, brought an action against her former employer under the Americans With Disabilities Act, and the district court dismissed it for failure to commence suit within ninety days of notice of dismissal of her complaint by the EEOC. Id. at 106. The district court found that although plaintiff had not received any of the dismissal and notice letters sent to her by the EEOC due to errors in the address, her telephone calls with the EEOC staff gave her actual notice of the requisite statute of limitations information more than ninety days prior to her filing in federal court. Id.

On appeal, the Third Circuit agreed, holding that, "[b]ecause the statute does not say that notice must be in writing, . . . oral notice can suffice to start the 90-day period. Oral notice must be

8

equivalent to written notice." Id. at 116. It went on to reason that:

> It simply would not make sense to force courts and defendants to wait for a specific form of notice in situations where a plaintiff is fully aware of the deadline he or she must meet to prosecute a lawsuit. The opposite rule would mean, in the extreme case that the limitations period would not begin to run for years, or even ever, if the EEOC never corrected its addressing. Permitting oral notice to start the limitations period strikes a fairer balance between a defendant's interest in a quick resolution of charges and clear finality for charges that will not become lawsuits, and a plaintiff's interest in having adequate opportunity to bring suit and a clear understanding of when and where to do so.

Id. Although the court found that the oral notice in that case omitted one of the necessary elements of the required notice – that the statute of limitations would start on the date of the phone conversation – it nonetheless affirmed that the notice required to trigger the statute of limitations need not come in any particular form. Id.; see also Hruska v. Vacation Charters Ltd., No. CIV.A.06-1672, 2009 WL 223865, at *4-5 (M.D. Pa. Jan. 27, 2009) (finding that where oral notice was just as complete as a written right to sue letter, statute of limitations began running from date of oral notice); Harley v. City of Philadelphia, No. CIV.A.01-6143, 2003 WL 22597606, at *2 (E.D. Pa. Nov. 4, 2003) (holding that notice need not be given in the form of a written right-to-sue letter so long as there is proof that the plaintiff was informed when the ninety-day statute of limitations would start).

Applying such principles to the present facts puts Plaintiff's argument on particularly more tenuous grounds. Plaintiff concedes that both she and her attorney received a written right-to-sue letter, dated December 17, 2009, from the EEOC. This letter expressly advised Plaintiff that the EEOC had investigated and was unable to conclude from the information obtained that there was any violation of the statutes. (Pl.'s Opp'n. Mot. Dismiss Ex. C.) Moreover, the letter informed Plaintiff of her right to sue and specifically stated, "[y]our lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; or your right to sue based on this charge will be lost." (Id.

(emphasis in original).) Under prevailing Third Circuit jurisprudence, such a letter was more than sufficient to make Plaintiff "fully aware of the deadline . . . she must meet to prosecute a lawsuit." Ebbert, 319 F.3d at 116. To hold that Plaintiff could simply avoid bringing her federal lawsuit while awaiting a right-to-sue letter from the Attorney General – despite her receipt of one directly from the EEOC – would allow her to sit on her rights for years with no repercussions. As we decline to allow such a judicially inefficient and fundamentally unfair result, we find that the December 17, 2009 right-to-sue letter from the EEOC constituted notice sufficient to trigger the ninety-day limitations period.

Alternatively, Plaintiff argues that "Defendant, City of Philadelphia, is judicially estopped from arguing that the Dismissal and Notice of Rights letter is a sufficient alternative to a letter from the Department of Justice, when they previously argued plaintiff was precluded from suit where EEOC not the Attorney General, i.e. Department of Justice, had issued the 'Right-to-Sue'." (Pl.'s Opp'n Mot. Dismiss 4 (citing Marion v. City of Philadelphia/Water Dept., 161 F. Supp. 2d 381 384 (E.D. Pa. 2001)). Specifically, Plaintiff notes that, approximately nine years ago, the City of Philadelphia, in the case of Marion v. City of Philadelphia, supra, took the position that the plaintiff had not exhausted administrative remedies since only the EEOC, and not the Attorney General, had issued a right-to-sue letter in a case against a political subdivision. Marion, 161 F. Supp. 2d at 384. Plaintiff now contends that Defendants are precluded from taking any position contrary to the one adopted in Marion.

Plaintiff's argument, however, misunderstands the judicial estoppel doctrine. This doctrine states that "'where a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position*, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the

10

position formerly taken by him.'" New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (emphasis added) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)); see also In re Armstrong World Indus., Inc., 432 F.3d 507, 517 (3d Cir. 2005) ("Judicial estoppel can be applied when a party asserts a certain position in a legal proceeding *and prevails*, only to assert a contrary position later on because of changed interests." (emphasis added)). "Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 777-78 (3d Cir. 2001).

Under this jurisprudence, judicial estoppel should not now preclude Defendants from adopting the position that the EEOC's right-to-sue letter was sufficient to trigger the statute of limitations. First and foremost, the Marion decision promptly dismissed the City's contrary argument, noting that in cases "where a plaintiff who has filed suit against a government or political subdivision received a right-to-sue letter from the EEOC rather than the Attorney General, courts have rejected the argument that a plaintiff is precluded from suit for lack of jurisdiction."[3] Marion, 161 F. Supp. 2d at 384. As such, a key element of judicial estoppel is missing in this case – Defendants' success on its prior, contrary position. Second, the Court can find no bad faith in Defendants' change in position. Having already been made aware of the legal invalidity of the prior argument, defense counsel would stray from their legal duties to re-assert that previous position without a valid basis for doing so. Finally, even were Defendants to be judicially estopped from

---

[3] To that end, the holding of Marion actually supports the Court's previous finding that a right-to-sue letter from the EEOC in a case against a political subdivision is sufficient to trigger the ninety-day statute of limitations.

11

changing their position, the Court would nonetheless be obliged to apply the correct law to the case before it.

In short, the Court finds that the December 17, 2009 right-to-sue letter from the EEOC triggered the ninety-day statute of limitations for Plaintiff's right to initiate a civil action in federal court.[4] Plaintiff, however, failed to file the present case until July 19, 2010, more than two-hundred days later. Accordingly, Plaintiff's Title VII cause of action is time-barred and must be dismissed.[5]

**B.  PHRA Claims**

Defendants also argue that Plaintiff's claims under the PHRA are time-barred. Again, the Court agrees and dismisses these claims.

The PHRA mandates that "[a]ny complaint filed pursuant to this section must be so filed [with the Pennsylvania Human Relations Commission] within one hundred eighty days after the alleged act of discrimination . . ." 43 PA. CONS. STAT. § 959(h); see also Capriotti v. Chivukula, No. CIV.A.04-2754, 2005 WL 83253, at *2 (E.D. Pa. Jan. 14, 2005) ("To preserve a claim under the PHRA, the Plaintiff must file an administrative charge with the Pennsylvania Human Relations

---

[4] Plaintiff makes the additional argument that although she does not possess the Attorney General's right-to-sue letter at the present time, she has requested the letter and is not barred, on grounds of non-exhaustion of administrative remedies, from pursuing her federal claim. As Defendants make no such contention, however, and as the Court dismisses the claim as time-barred, this argument need not be addressed.

[5] The Third Circuit regards the ninety-day filing period as a statute of limitations, making it subject to the doctrine of equitable tolling. Carter v. Keystone, 360 Fed. Appx. 271, 272 (3d Cir. 2010) (citing Burgh, 251 F.3d at 470). In Title VII cases, equitable tolling is generally appropriate only when "the defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." Seitzinger, 165 F.3d at 240 (citations omitted). Plaintiff bears the burden to show that equitable tolling is warranted. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005).
   Plaintiff, in this case, has not even alleged that the statute should be equitably tolled, let alone set forth sufficient grounds for the Court's exercise of its equitable tolling powers.

Commission within 180 days of the alleged act of discrimination."). "If a plaintiff fails to file a timely complaint with the Pennsylvania Human Relations Commission, then he or she is precluded from judicial remedies under the PHRA." Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).

Plaintiff's Complaint alleges two acts of discrimination, one of which concluded, at the latest, on July 31, 2006, (Compl. ¶ 12), and the other of which concluded, at the latest, on November 28, 2007. (Id. ¶ 15.) Plaintiff did not file her claim with either the EEOC or the PHRC until August 8, 2008. (Id. ¶ 24.) As a minimum of 264 days elapsed between the latest alleged act of discrimination/retaliation and the filing of her PHRA claim, Plaintiff has failed to satisfy the 180-day limitations period.

In her Response Brief, Plaintiff now contends that the correct period to file with the PHRC is 300 days – not 180 days – from the date of the last occurrence of the alleged discrimination and/or retaliation. (Pl.'s Opp'n Mot. Dismiss 5-6.) She reasons that, pursuant to the worksharing agreement between Pennsylvania and the EEOC, a plaintiff that files with the EEOC then has a period of 300 days in which to pursue a claim with the PHRC.

This argument, however, misunderstands the applicable law. Pursuant to the federal statute, a charge of employment discrimination must ordinarily be filed with the EEOC within 180 days of the accrual of the plaintiff's cause of action. 42 U.S.C. § 2000e-5(e)(1). Where, however, the plaintiff has initially instituted proceedings with a state or local agency – such as the PHRC – the plaintiff has "three hundred days after the alleged unlawful employment practice occurred, or . . . thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier . . ." Id.; see also Quinn v. Pa. Ins. Dept., No. CIV.A.00-939, 2000 WL 1368027, at *1 (E.D. Pa. Sept. 12, 2000). Moreover, "[t]he PHRC and the EEOC

have entered into a Worksharing Agreement . . . which provides that '[i]n order to facilitate the assertion of employment rights, the EEOC and the [PHRC] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially received the charges.'" Seybert Int'l v. Int'l Group, Inc., No. CIV.A.07-3333, 2009 WL 722291, at *14 (E.D. Pa. Mar. 18, 2009) (citing Worksharing Agreement, Ex. 11, Section I.A.). Thus, under Pennsylvania law, a charge of discrimination that has been forwarded by the EEOC to the PHRC pursuant to the Worksharing Agreement may be sufficient to satisfy the filing requirements of the PHRA. Id. "In this district, the worksharing agreement has been construed to permit even a claimant who has not filed a claim with the PHRC to take advantage of the 300-day statute of limitations, based on an understanding that a filing with the EEOC constitutes, in effect, an 'initiation and termination' of a PHRC case." Quinn, 2000 WL 1368027, at *2.

This extended federal statute of limitations, however, is not reciprocal to the state statute of limitations. "According to the Court of Appeals for the Third Circuit . . . a plaintiff may not rely on the operation of the worksharing agreement to satisfy the filing requirements of the PHRA and thereby initiate a PHRA claim." DuBose v. District 1199c, Nat. Union of Hosp. & Health Care Employees, 105 F. Supp. 2d 403, 411 (E.D. Pa. 2000)[6] (citing Woodson, 109 F.3d at 916). To preserve a claim under the PHRA, the Plaintiff must file an administrative charge with the PHRC within 180 days of the alleged act of discrimination. Sharp v. BI/IP Int'l, 991 F. Supp. 451, 457 (E.D. Pa. 1998). "Filing within the 300 day EEOC deadline but past the PHRA deadline will not

---

[6] Plaintiff quotes DuBose for the proposition that "in deferral states with worksharing agreements such as Pennsylvania, the 300 day filing period is available regardless of the state filing." (Pl.'s Opp'n Mot. Dismiss 6 (quoting DuBose, 105 F. Supp. 2d at 411).) Notably, however, the court made this statement only in connection with determining whether the plaintiff "filed a timely *EEOC* charge and exhausted his administrative remedies with respect to his *federal* ADA claim." Id. at 411 (emphasis added).

preserve Plaintiff's state claim." Capriotti, 2005 WL 83253, at *2; see also Sharp, 991 F. Supp. at 457 (rejecting argument that extended 300-day statute of limitations for filing with the EEOC applies to filing with the PHRC under the worksharing agreement). As noted above, "[i]f a plaintiff fails to file a timely complaint with the PHRA, then he or she is precluded from judicial remedies under the PHRA." Woodson, 109 F.3d at 925.

In this case, Plaintiff failed to initiate a claim with the PHRC until well after the expiration of the 180-day time limit. Such a failure precludes her from pursuing such claims here and requires that they be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Title VII claim is time-barred because she failed to initiate suit within 90 days of receiving her right-to-sue letter, and her PHRA claim is time-barred because she did not file an administrative claim with the PHRC within 180 days of the alleged discriminatory acts. Accordingly, the Court dismisses her entire Complaint with prejudice.

An appropriate Order follows.